IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DANIELLE CHATMAN                                            PLAINTIFF

v.                                                CIVIL ACTION NO. 3:16-cv-00008-GHD-SAA

JIMMY GRAY CHEVROLET, INC. and
JOHN DOES 1–10                                       DEFENDANTS

**MEMORANDUM OPINION GRANTING
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Presently before the Court is Defendant Jimmy Gray Chevrolet, Inc.'s motion to compel arbitration [7]. Upon due consideration, the Court finds that the motion should be granted.

## *I.*     *Factual and Procedural Background*

On January 8, 2016, Plaintiff Danielle Chatman ("Plaintiff") filed this suit against Defendant Jimmy Gray Chevrolet, Inc. ("Defendant") and ten fictitious defendants. The following facts are not in dispute: Defendant is an automobile dealership in Southaven, Mississippi. Pl.'s Compl. [1] ¶ 5; Def.'s Answer [4] ¶ 5. On a visit, Plaintiff decided to purchase a 2015 Chevrolet Camaro (the "Camaro") from Defendant. Pl.'s Compl. ¶ 9; Def.'s Answer [4] ¶ 9. Several days later, Plaintiff returned to Defendant to finalize the purchase of the Camaro. Pl.'s Compl. [1] ¶ 10; Def.'s Answer [4] ¶ 10. Plaintiff's mother was present as co-signor. Pl.'s Compl. [1] ¶ 12; Def.'s Answer [4] ¶ 12. A salesman of Defendant, James M. Colson III, took information on Plaintiff's and her mother's proof of employment and residence. Pl.'s Compl. [1] ¶ 13; Def.'s Answer [4] ¶ 13. Plaintiff and her mother signed a finance or purchase application for the Camaro. Pl.'s Compl. [1] ¶ 17; Def.'s Answer [4] ¶ 17. Defendant and Plaintiff entered into a civil contractual agreement to purchase the Camaro. Pl.'s Compl. [1] ¶¶ 76, 120; Def.'s

1

Answer [4] ¶¶ 76, 120. This document was entitled "Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)" and will be hereinafter referred to as the "Sales Agreement." Defendant accepted Plaintiff's down payment of Five Thousand Five Hundred Dollars ($5,500). Pl.'s Compl. [1] ¶¶ 77, 121; Def.'s Answer [4] ¶¶ 77, 121. Colson gave Plaintiff and her mother copies of the paperwork and the keys to the Camaro. Pl.'s Compl. [1] ¶¶ 19, 121; Def.'s Answer [4] ¶¶ 19, 121. Several days later, Defendant contacted Plaintiff and requested that she bring in another form of proof of residence; she did; Defendant subsequently contacted her to request that she bring in an additional form of proof of residence; she returned with another form of proof of residence. Pl.'s Compl. [1] ¶¶ 21–26; Def.'s Answer [4] ¶ 21–26. Defendant informed Plaintiff that the phone number given for Plaintiff's mother's employer was incorrect. Pl.'s Compl. [1] ¶ 32; Def.'s Answer [4] ¶ 32. Upon Plaintiff's departure in the Camaro, Defendant contacted the Southaven Police Department. Pl.'s Compl. [1] ¶ 41; Def.'s Answer [4] ¶ 41. Subsequently, Kevin Smith, an employee of Defendant, spoke with Detective Seth Kern of the Southaven Police Department. Pl.'s Compl. [1] ¶ 46; Def.'s Answer [4] ¶ 46. Smith filed a police report against Plaintiff which included Smith's affidavit. Pl.'s Compl. [1] ¶¶ 80, 124; Def.'s Answer [4] ¶¶ 80, 124. The Southaven Police Department retrieved the Camaro from Plaintiff and returned it to Defendant. Pl.'s Compl. [1] ¶ 65; Def.'s Answer [4] ¶ 65. The Desoto County grand jury returned a single-count indictment against Plaintiff for the unlawful taking of a motor vehicle. Pl.'s Compl. [1] ¶¶ 83, 127; Def.'s Answer [4] ¶¶ 83, 127. These charges were later dropped. Pl.'s Compl. [1] ¶¶ 71–72; Def.'s Answer [4] ¶ 72.

Plaintiff alleges that Defendant issued false statements to the Southaven Police Department and falsely instituted criminal proceedings against Plaintiff on the charge of automobile theft due

to Defendant's failure to thoroughly verify Plaintiff's mother's employment or provide ample time to give additional proof of residence and employment. Pl.'s Compl. ¶ 73. Plaintiff avers that as a result of the charges brought by Defendant against her, she was arrested by the Memphis Police Department and was incarcerated for five days in the Desoto County Jail until she could obtain money for bail. *Id.* ¶¶ 66–68. Plaintiff further avers that the prosecuting attorney ultimately dismissed the charges due to insufficient evidence. *Id.* ¶ 72.

Plaintiff asserts numerous state law causes of action against Defendant, including malicious prosecution, negligence, gross negligence, intentional infliction of emotional distress, defamation, civil conspiracy, civil assault and battery, false arrest/false imprisonment, abuse of process, and breach of contract. She brings her case in federal court on the basis of diversity jurisdiction, alleging that she is a citizen of Tennessee and Defendant is a citizen of Mississippi, being a Mississippi corporation with its principal place of business in Mississippi.

On February 10, 2016, Defendant filed an answer [4] to the complaint [1]. Subsequently, on February 29, 2016, Defendant filed the present motion to compel arbitration [7]. Plaintiff filed a response in opposition [13], and Defendant filed a reply [16]. The matter is now ripe for review.

## *II.* *Analysis and Discussion*

Defendant moves the Court to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration act (the "FAA") based on an arbitration agreement contained in the Sales Agreement, and specifically argues, *inter alia*, that the arbitration agreement contains a delegation clause that requires that an arbitrator decide gateway issues including whether the claims at issue are arbitrable under the terms of the arbitration agreement. Defendant further moves the Court to enter a final judgment of dismissal terminating this litigation and enjoining Plaintiff from

3

attempting to judicially prosecute any claims against Defendant until the arbitration is concluded and confirmed.

Plaintiff argues that the Court should deny the motion to compel arbitration and specifically argues that Defendant waived its right to arbitration and further that the delegation clause in the arbitration agreement is unconscionable. Plaintiff alternatively argues that the Court should hold an evidentiary hearing or allow discovery prior to ruling on the motion. Upon consideration of the issues presented in the motion, the Court is of the opinion that an evidentiary hearing or discovery would be superfluous; the issues presented can be answered upon review of the motion papers, pleadings, attachments, and relevant authorities, as indicated below.

In 1925, Congress enacted the FAA in response to the longstanding, widespread judicial hostility to arbitration agreements that existed at English common law and was adopted by American courts. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492–93 (5th Cir. 2006).[1] "The FAA provides that a 'written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Marmet Health Care Ctr., Inc. v. Brown*, —— U.S. ——, ——, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (Feb. 21, 2012) (quoting 9 U.S.C. § 2). The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). However, the FAA

---

[1] In 1947, Congress reenacted and codified the FAA as Title 9 of the United States Code.

> does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the [FAA] makes clear that its purpose was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). Because " 'arbitration is a matter of contract,' " courts must " 'rigorously enforce arbitration agreements according to their terms.' " *Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 517 (5th Cir. 2013) (per curiam) (quoting *Am. Express Co. v. Italian Colors Rest.*, –– U.S. ––––, ––––, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (citation and internal quotation marks omitted)). Thus, arbitration may be compelled only if the parties agreed to arbitrate the dispute in question. *See* 9 U.S.C. § 4; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010); *VT Halter Marine, Inc. v. Wartsila N. Am., Inc.*, 511 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986))).

The Court now turns to the merits of the motion to compel arbitration and whether the parties have agreed to arbitrate this particular claim. In the case *sub judice*, the Court must determine "first, whether the parties entered into a valid agreement to arbitrate some set of claims; and second, whether that agreement . . . contain[s] a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold arbitrability issues." *See Kubala v. Supreme Prod. Servs., Inc.*, No. 15-41507, --- F.3d ---, ---, 2016 WL 3923866, at *2 (5th Cir. July 20, 2016); *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003).

5

In deciding these issues, the Court applies "generally-applicable rules of contract interpretation and enforcement." *See Baldwin v. Cavett*, 502 F. App'x 350, 353 (5th Cir. 2012) (per curiam); *see also* 9 U.S.C. § 2; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Although the Court must "apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," the Court "do[es] not apply this policy when determining whether a valid agreement exists." *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The determination of whether a party is bound by an arbitration agreement is included within the broader issue of "whether the parties entered into <u>any arbitration agreement at all</u>." *Kubala*, --- F.3d at ---, 2016 WL 3923866, at *2 (emphasis in original); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999)). With the foregoing in mind, the Court examines the two prongs of the analysis: whether these parties agreed to arbitrate this dispute, and if so, whether this dispute is within the scope of the arbitration agreement.

**(a) Agreement to Arbitrate**

First, the Court must determine based on contract interpretation and formation principles whether the parties entered into an agreement to arbitrate. At this juncture of the analysis, the Court does not reach whether there is an "agreement to arbitrate <u>the claim[s] currently before the [C]ourt</u>," but merely "whether there is any agreement to arbitrate any set of claims." *See Kubala*, --- F.3d at ---, 2016 WL 3923866, at *3.

6

As mentioned above, "[t]he purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2); *see Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1064 ("[a]rbitration is a matter of contract between the parties"). Thus, in determining whether parties agreed to arbitrate a certain matter, the Court must apply the contract law of the particular state that governs the agreement. *See Washington Mut. Fin. Grp., LLC*, 364 F.3d at 264 (citing *First Options of Chi., Inc.*, 514 U.S. at 944, 115 S. Ct. 1920).

The Sales Agreement provides that federal law and Mississippi law apply. Under Mississippi law, the determination of whether a valid arbitration agreement exists is governed by the law of contracts, specifically, an examination of whether the elements of contract are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013) (citing *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010) (internal quotation marks omitted)).

It is undisputed that Plaintiff, her mother, and Defendant's salesman James M. Colson III signed the purchase application for the Camaro, and that Plaintiff and Defendant subsequently entered into a civil contractual agreement for Plaintiff to purchase the Camaro (the Sales Agreement). *See* Pl.'s Compl. [1] ¶¶ 6, 8, 15–17, 76. It is further undisputed that Defendant accepted from Plaintiff a $5,500 down payment on the Camaro. Pl.'s Compl. [1] ¶¶ 77, 121; Def.'s Answer [4] ¶¶ 77, 121. Plaintiff alleges that "[t]he contract signed by all parties indicates a mutual agreement between the parties." *Id.* ¶ 134.

7

Clearly, the Sales Agreement involved two or more contracting parties, and consideration considered of a cash amount in exchange for the Camaro. The Sales Agreement was sufficiently definite. Furthermore, the parties have not alleged or presented evidence that they lacked the legal capacity to contract or that mutual assent was lacking. Therefore, each element of contract was present. *See Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 613 (Miss. 2014).

As stated above, the Sales Agreement is entitled "Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)." The title of the document and parenthetical appear in boldface and in all capital letters. *See* Sales Agreement [7-1] at 1. Plaintiff attaches to her complaint what is apparently an excerpt of the signed Sales Agreement, including page three, which contains a provision appearing in regular type and boldface and entitled "Agreement to Arbitrate." Sales Agreement [1-1] at 3. The Agreement to Arbitrate provision states as follows: "By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate." *Id.* Plaintiff (the co-buyer of the Camaro) and her mother (the buyer of the Camaro) signed this provision. *See id.* Below the Agreement to Arbitrate provision is a section concerning alternative dispute resolution which provides as follows: "You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reserve side, before signing below. You confirm that you received a completely filled-in copy of these documents when you signed them." *Id.* Plaintiff and her mother signed this provision as well. *See id.* The Arbitration Provision states in pertinent part as follows:

> Any claim or dispute, whether in contract, tort, . . . or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . shall, at your or our election, be resolved by neutral binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute.

Sales Agreement [7-1] at 4. The Sales Agreement further provides that "[a]ny arbitration under this Arbitration Provision shall be governed by the [FAA] and not by any state law concerning arbitration." *Id.* The Court finds that the parties entered into an agreement to arbitrate. The Court now turns to the question of whether Plaintiff's case falls within the scope of the arbitration agreement.

**(b) Scope of Arbitration Agreement**

The question of whether Plaintiff's claims are covered by the arbitration agreement is based on contract interpretation and ordinarily is a question for the Court, not the arbitrator. *See Kubala*, --- F.3d at ---, 2016 WL 3923866, at *2 (citing *Will–Drill Res., Inc.*, 352 F.3d at 214). However, where, as here, "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *See id.* (citing *First Options of Chi., Inc.*, 514 U.S. at 942, 115 S. Ct. 1920). The Fifth Circuit explained in *Kubala*:

> Ordinarily this type of dispute involves two layers of arguments—the merits . . . and arbitrability of the merits . . . . The presence of a delegation clause adds a third: "Who should have the primary power to decide" whether the claim is arbitrable. Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. The only

9

question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.* (citing *First Options of Chi., Inc.*, 514 U.S. at 942, 115 S. Ct. 1920; *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68–69, 130 S. Ct. 2772).[2]

The subject arbitration agreement contains a delegation clause that provides in pertinent part: "[a]ny claim or dispute, whether in contract, tort, . . . or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral binding arbitration and not by a court action." Sales Agreement [7-1] at 4 (emphasis added). Similarly worded clauses have been held to be delegation clauses in various cases, as follows: *Rent-A-Ctr., W., Inc.*, 561 U.S. at 66–72, 130 S. Ct. 2772 ("[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.");

---

[2] The Fifth Circuit has "carved out a narrow exception to the *Rent-A-Center* rule"; " '[w]here the argument for arbitration is wholly groundless,' we refuse to enforce a delegation clause." *Kubala v. Supreme Prod. Servs., Inc.*, No. 15-41507, --- F.3d ---, ---, 2016 WL 3923866, at *2 n.1 (5th Cir. July 20, 2016) (quoting *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014)). However, "[s]uch cases are exceptional, and the rule in *Douglas* is not a license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause. So long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." *Id.* (citing *Douglas*, 757 F.3d at 463) (quoting *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009)). In such an analysis, the Court "should not resolve the parties' arbitrability arguments," but should instead "look only to whether there is a bona fide dispute on arbitrability. If there is, the claim must be referred to arbitration for resolution of the arbitrability issue." *See id.* In this case, the Court finds that a bona fide dispute on arbitrability exists.

*PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 259 (5th Cir. 2015) ("The parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person."); *Phillips v. Bestway Rental, Inc.*, 542 F. App'x 410, 411 (5th Cir. 2013) (the arbitrator has "exclusive authority to resolve any dispute relating to the interpretation, application, enforceability, or formation of this Agreement"); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (per curiam) ("[a]ny dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)"); *Hancock Med. Ctr. v. Quorum Health Res., LLC*, No. 1:14CV55-HSO-RHW, 2015 WL 1387469, at *6 (S.D. Miss. Mar. 25, 2015), *appeal dismissed* (June 2, 2015) ("The arbitrator shall have the exclusive authority to decide the scope of issues to be arbitrated. Any challenge to the arbitrability of any issue related in any way to the matters or claims in dispute between the Parties shall be determined solely by the arbitrator."); *Hawkins v. Region's*, 944 F. Supp. 2d 528, 530 (N.D. Miss. 2013) ("[a]ny dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire [customer] Agreement, shall be decided by the arbitrator(s)"); *Staples v. Regions Bank*, 825 F. Supp. 2d 754, 759 (N.D. Miss. 2011) ("any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or this Note, will be decided by the arbitrator(s)").

Based on all of the foregoing, the Court finds that the subject arbitration agreement contains a delegation clause. "The Supreme Court . . . has emphasized that where such a clause exists, the courts may consider a challenge to the clause, but must 'leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Phillips*, 542 F. App'x at 411 (quoting

*Rent-A-Center, W., Inc.*, 561 U.S. at 72, 130 S. Ct. 2772). Consequently, in this case, the Court considers Plaintiff's arguments only to the extent that they challenge the delegation clause. *See id.*

Plaintiff's arguments, which propose to challenge the delegation clause itself, include that the delegation clause is invalid because Defendant waived its right to arbitrate by initiating criminal proceedings against Plaintiff in Desoto County as a result of the dispute over the Sales Agreement, and further that the contractual agreement to arbitrate should not be enforced because it is procedurally and substantively unconscionable. The Court examines each argument in turn.

First, Plaintiff challenges the validity of the delegation clause on the basis that Defendant waived its contractual right to arbitrate arbitrability when it commenced judicial proceedings in Desoto County, Mississippi as a direct result of the dispute with the Sales Agreement, and thus, cannot now claim valid assent or its intent to be bound by the delegation clause. Plaintiff contends that specifically Defendant alleged Plaintiff committed fraud/false pretenses to secure the Sales Agreement for the Camaro, an allegation that according to Plaintiff parallels civil fraud in the inducement and should render the Sales Agreement voidable by the innocent party.

"[The FAA] establishes that, as a matter of federal law, any doubts concerning the scope of <u>arbitrable issues</u> should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of <u>waiver</u>, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (emphases added); *see also Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (discussing *Moses H. Cone*); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496–97 (5th Cir. 1986). In this Court's opinion, the issue of waiver as expressed by

Plaintiff is a "doubt[] concerning the scope of arbitrable issues" and is a "defense to arbitrability" as a whole, rather than a specific challenge to the delegation clause. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (citing *Moses H. Cone*, 460 U.S. at 25, 103 S. Ct. 927). Given that the waiver issue goes to the scope of arbitration, which in this case must be decided by the arbitrator given the existence of the delegation clause, unquestionably, the issue must be decided by the arbitrator and not this Court.

Second, Plaintiff argues that the delegation clause, or agreement to arbitrate arbitrability, is unconscionable and thus invalid. "Like other contracts, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68, 130 S. Ct. 2772 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). Plaintiff argues that "legal constraints external to the parties' agreement foreclose[] arbitration of those claims," *see Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007)—specifically, that the defense of unconscionability under Mississippi contract law invalidates the delegation clause, *see Caplin Enters., Inc.*, 145 So. 3d at 614 (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002) (citing *Doctor's Assocs., Inc.*, 517 U.S. at 686, 116 S. Ct. 1652). Plaintiff maintains that the delegation clause is both procedurally and substantively unconscionable, because (1) Plaintiff did not agree to delegate the "gateway issue" to an arbitrator; (2) the Agreement to Arbitrate provision failed to mention the delegation clause or the idea of arbitrating arbitrability; and (3) Plaintiff never signed or agreed to the delegation clause, which was contained on a separate page with no signature block and was hidden. Plaintiff maintains that at the time of the agreement she did not understand that an agreement to arbitrate and an agreement

13

to enforce arbitrability were two separate agreements forfeiting different rights. Plaintiff further maintains that the delegation provision is separate and apart from the agreement requesting Plaintiff's signature on the front of the contract and that no print in boldface indicates scope, interpretation, or arbitrability, nor does it discuss the rights Plaintiff would forfeit in the event she agreed to arbitration. Plaintiff maintains that every detail concerning the delegation clause in the agreement is in extremely fine print and regular typeface. Finally, Plaintiff argues that Defendant neither read the provision to her nor drew her attention to it. In sum, Plaintiff argues that Defendant's bargaining power substantially outweighed Plaintiff's bargaining power and that for all of these reasons the delegation provision at issue was procedurally and substantively unconscionable.

"Under Mississippi law, 'unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.' " *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 502 (5th Cir. 2009) (per curiam) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998) (internal quotation marks omitted)); *see Caplin Enters., Inc.*, 145 So. 3d at 614. "There are 'two types of unconscionability, procedural and substantive.' " *Id.* at 503 (quoting *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002)).

"Procedural unconscionability may be proven by demonstrating 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.' " *Id.* (quoting *E. Ford, Inc.*, 826 So. 2d at 714). Plaintiff's argument focuses on her lack of understanding of the terms of the arbitration agreement and

specifically the delegation provision. However, "parties are charged with understanding the terms of contracts that they sign." *Id.* "Plaintiffs may not escape the agreement by simply stating [they] did not read the agreement or have it read to [them] or understand its terms." *See Cleveland v. Mann*, 942 So. 2d 108, 115–16 (Miss. 2006); *EquiFirst Corp. v. Jackson*, 920 So. 2d 458, 464 (Miss. 2006). Even "lack of education and inability to read or understand the agreement" or the other contracting party's lack of explaining the terms verbally cannot render a delegation clause procedurally unconscionable. *See id.* at 114. "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him . . . ." *Cont'l Jewelry Co. v. Joseph*, 105 So. 639, 639 (Miss. 1925).

Furthermore, the delegation clause at issue is written in plain English and conspicuous type and clearly states that the arbitrability of claims must be determined by the arbitrator. *See Bell*, 358 F. App'x at 503. The arbitration agreement features the boldface Agreement to Arbitrate provision and clear instructions that by signing the provision the signer demonstrates agreement with the arbitration provision, directs the signer to the arbitration provision "on the reverse side of this contract," and instructs the signer to "[s]ee the Arbitration Provision for additional information concerning the agreement to arbitrate." *See* Sales Agreement [1-1] at 2. Plaintiff's signature under the "Agreement to Arbitrate" provision signifies her understanding of the terms. *See Cleveland*, 942 So. 2d at 115. In addition, the Arbitration Provision contains portions written in boldface and all capital letters, particularly the instruction to "PLEASE REVIEW" the provision and that "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." Sales Agreement [7-1] at 4. The delegation provision, which is contained within the Arbitration

Provision, provides in plain English that "[a]ny claim or dispute, whether in contract, tort . . . or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute) . . . shall be resolved by neutral, binding arbitration and not by a court action." *Id.*

Moreover, even if the Sales Agreement at issue was a contract of adhesion, that is, even if Defendant presented the agreements to Plaintiff on a take-it-or-leave-it basis or in a way that demonstrated more bargaining power for Defendant, this alone would not render the delegation clause procedurally unconscionable. *See Bell*, 358 F. App'x at 503; *Caplin Enters., Inc.*, 145 So. 3d at 615. "The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market facts, timing[,] or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *E. Ford, Inc.*, 826 So. 2d at 716; *see also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("Adhesion contracts are not automatically void."). There were numerous car dealerships in the Southaven and Memphis area, and Plaintiff was not by any means coerced to do business with Defendant. *See Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002). Plaintiff has failed to argue that any of these conditions of procedural unconscionability existed and has failed to otherwise show she was unable to contract on more favorable terms or to refrain from contracting at all. *See Bell*, 358 F. App'x at 503.

Similarly, Plaintiff has failed to argue that substantive unconscionability existed. " 'Substantive unconscionability may be proven by showing the terms of the [delegation clause] to be oppressive.' " *See Bell*, 358 F. App'x at 503 (quoting *E. Ford, Inc.*, 826 So. 2d at 714). "An

agreement may be substantively unconscionable when it is one-sided and one party is deprived of all the benefits of the agreement or left without a remedy for the other party's nonperformance or breach, a large disparity between cost and price or a price far in excess of that prevailing in the market price exists, or the terms bear no reasonable relationship to business risks assumed by the parties." *Id.* (citing *Miss. Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006) (internal quotation marks omitted)). "To determine whether a contract is substantively unconscionable, 'we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties.'" *Caplin Enters., Inc.*, 145 So. 3d at 614 (quoting *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009) (quoting *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005) (overruled on other grounds))). "It is not necessary that [delegation clauses] contain 'mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner.'" *See id.* (quoting 21 Williston on Contracts § 57:15 (4th ed. 2013) (quoting *Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*, 977 P.2d 989, 996 (Mont. 1999)). "But 'disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter . . . that the [delegation clause] becomes unconscionable and oppressive.'" *Id.* (quoting 21 Williston on Contracts § 57:15 (4th ed. 2013) (quoting *Iwen*, 977 P.2d at 996)).

With respect to the delegation clause at issue, "both parties to the [delegation clause] ha[ve] the power to compel arbitration over a dispute, indicating mutuality of the arbitration clause." *See Griffin v. ABN Amro Mortg. Grp. Inc.*, 378 F. App'x 437, 439 (5th Cir. 2010) (per curiam); *see also Daniels v. Virginia Coll. at Jackson*, 478 F. App'x 892, 893 (5th Cir. 2012) (per

curiam) (citing *Sawyers*, 26 So. 3d at 1035). "[T]he [delegation clause] pertains to claims of either party and does not benefit [Defendant] only. It is equally binding upon [Defendant] and [Plaintiff]." *See Russell*, 826 So. 2d at 726.

Because the Court finds that there is a valid delegation clause, "we do not reach the arbitrability dispute" and instead must stay the case *sub judice* and refer the matter to arbitration according to 9 U.S.C. § 3, which provides that "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," a court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

### *III. Conclusion*

For the foregoing reasons, Defendant's motion to compel arbitration [16] is GRANTED; the matter is REFERRED TO ARBITRATION for the purpose of determining whether the claims at issue are arbitrable; and this case is STAYED pending the outcome of the same. The parties are ENJOINED from attempting to judicially prosecute any claims against each other until such time as the arbitrability issue is decided.

An order in accordance with this opinion shall issue this day.

THIS, the 12th day of September, 2016.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE